AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Central District of California

| | |
|---|---|
| United States of America<br>v.<br><br>Oscar Magana Reyes,<br>aka "Oscar Magana-Madrigal"<br><br><br><hr>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>) |

FILED
CLERK, U.S. DISTRICT COURT

08/30/2025

CENTRAL DISTRICT OF CALIFORNIA
BY: ___ AP ___ DEPUTY

Case No.  5:25-mj-00552

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____August 29, 2025_____ in the county of _____San Bernardino_____ in the _____Central_____ District of _____California_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 111(a)(1) | Assaulting, resisting, or impeding certain officers or employees involving physical contact |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

HSI Special Agent George Kwai
*Printed name and title*

Sworn and attested to before me via telephone.

Date:  _____August 30, 2025_____

_____
*Judge's signature*

City and state:  _____Riverside, CA_____      Honorable Sheri Pym, U.S. Magistrate Judge
*Printed name and title*

*AUSA:* Cory L. Burleson

## AFFIDAVIT

I, George Kwai, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1.    This affidavit is made in support of a criminal complaint against Oscar Magana Reyes ("MAGANA"), also known as Oscar Magana-Madrigal, for a violation of 18 U.S.C. § 111(a)(1): Assaulting, resisting, or impeding certain officers or employees involving physical contact.

2.    The facts set forth in this affidavit are based on my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not purport to set forth all my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

## II. BACKGROUND OF AFFIANT

3.    I am a Special Agent with Homeland Security Investigations ("HSI") and have been employed as a Special Agent since December 2008.  I am currently assigned to the Child Exploitation Investigations Group ("CEIG") at the HSI office in Corona, California.  Since entering duty at HSI, I have conducted investigations involving national security, human smuggling, visa fraud, narcotics, immigration, and child exploitation.  I am a graduate of the Federal Law Enforcement

Training Center and have received extensive training in the investigation of narcotics trafficking, financial crimes, immigration offenses, and other violations of federal law.

4.    Throughout my career, I have participated in numerous investigations and have conducted interviews with multiple victims, witnesses, suspects, and informants.  I am familiar with the tactics used by individuals and criminal organizations to smuggle aliens, evade detection, assault law enforcement officers, and obstruct investigations.

### III. <u>STATEMENT OF PROBABLE CAUSE</u>

**A.    Federal Officers Encounter MAGANA during an Immigration Enforcement Operation**

5.    Based on my review of law enforcement reports, my conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

6.    On August 29, 2025, law enforcement officers from U.S. Customs and Border Protection ("CBP") and U.S. Immigration and Customs Enforcement – Enforcement and Removal Operations ("ERO") (collectively, "the enforcement team") were conducting a targeted immigration enforcement operation on the 700 block of W. Rialto Avenue in San Bernardino, California (hereafter "Location #1").  Members of the enforcement team were clearly identifiable as federal law enforcement officers, wearing vests and clothing marked with "POLICE."

7.    At approximately 8:00 a.m., the enforcement team saw an individual riding a bicycle near Location #1 who resembled the target of their immigration enforcement operation. The rider

on the bicycle was later identified as MAGANA, who was not the enforcement team's target.

8.    The two CBP officers on the enforcement team drove up to MAGANA to conduct a field interview.  When the CBP officers asked MAGANA for his identification, MAGANA provided the CBP officers with a Consular Identification Card from Mexico bearing his name.  One of the CBP officers asked MAGANA if he had any United States documents, and MAGANA replied that he did not. The CBP officer next asked MAGANA if he had legal status to be in the United States, and then MAGANA fled on his bicycle.

**B.    MAGANA Resisted Arrest, Attempted to Bite a CBP Officer, and Stole a CBP Officer's ECW**

9.    The enforcement team caught up to MAGANA outside a residence on the 900 block of W. Rialto Avenue in San Bernardino (hereafter "Location #2").  The enforcement team attempted to arrest MAGANA, and MAGANA pushed his bicycle toward the enforcement team.  The enforcement team tried to handcuff MAGANA, but MAGANA physically resisted and did not comply with law enforcement commands.  One of the CBP officers deployed his Electronic Control Weapon ("ECW")[1] and struck MAGANA.

10.    Despite being struck by the ECW, MAGANA lunged at the CBP officer who fired the ECW and grabbed the CBP officer's arm. According to the CBP officer, MAGANA attempted to bite the CBP officer's arm but ended up biting the officer's long-sleeved

---

[1] ECWs, commonly referred to as "tasers," use electricity to incapacitate violent or combative subjects either through a wire tethered to barbed projectiles fired at the person or by holding the weapon directly against the person.

shirt.  After biting the CBP officer's shirt, MAGANA forcefully
stole the CBP officer's ECW.

     11.  An ERO officer on the enforcement team issued verbal
commands to MAGANA and struck MAGANA multiple times with a baton
trying to subdue him.  MAGANA did not comply with the officers'
commands and the officers were not able to subdue him, so the
ERO officer deployed oleoresin capsicum spray, also known as
pepper spray, on MAGANA.

     **C.  MAGANA Shocked an ERO Officer with the Stolen ECW**

     12.  MAGANA remained combative and maintained possession of
the stolen ECW.  An ERO officer then deployed his ECW at MAGANA
with limited success, as MAGANA continued resisting.  MAGANA
then struck the ERO officer with the stolen ECW, which sent an
electric shock to the ERO officer's groin area.  The shock
briefly incapacitated the ERO officer and caused the officer to
fall.

     **D.  MAGANA Attempted to Shock Other Members of the**
          **Enforcement Team**

     13.  An ERO officer deployed additional pepper spray at
MAGANA attempting to subdue him.  MAGANA pointed the stolen ECW
at members of the enforcement team and pulled the trigger
multiple times in the direction of the enforcement team.
However, the stolen ECW had run out of projectiles.

     **E.  MAGANA Fled into a Nearby Residence to Evade the**
          **Enforcement Team**

     14.  After attempting to deploy the stolen ECW at the
enforcement team, MAGANA ran into a nearby residence on the 900
block of W. Rialto Avenue in San Bernardino (hereafter "Location

#3"). MAGANA entered Location #3 through an unlocked front
door, and the enforcement team later confirmed that MAGANA did
not live at Location #3.

15. After MAGANA entered Location #3, MAGANA barricaded
himself inside a locked bedroom. Additional law enforcement
personnel arrived at Location #3 to provide support for the
enforcement team. A resident of Location #3 provided consent
for law enforcement to enter Location #3. Following repeated
verbal commands, MAGANA eventually exited the bedroom and was
taken into custody by law enforcement.

   **F.   MAGANA Admitted to Trying to Stun Law Enforcement
          Personnel with the Stolen ECW**

16. On August 29, 2025, I interviewed MAGANA with another
HSI Special Agent who is proficient in Spanish. The interview
was conducted in the Spanish language, and the other agent
translated MAGANA's responses to me in English. During the
interview, MAGANA admitted to trying to shock the officers
because MAGANA wanted to do the same thing to the officers as
what the officers had done to him. MAGANA also said that he had
left the ECW in the kitchen of Location #3. MAGANA added that
if he still had the ECW when he was in the bedroom, he would
have tried to shock an officer he saw outside the bedroom
window.

   **G.   Security Camera Footage from Location #3 Showed MAGANA
          Holding an ECW**

17. On August 29, 2025, HSI Special Agents went to
Location #3 to determine if the residence had security cameras
which may have captured footage of MAGANA. A resident of

Location #3 provided the agents with a video of MAGANA at the front door of Location #3. I reviewed the video from Location #3 and could see MAGANA holding an ECW as he was about to enter Location #3.

## IV. __CONCLUSION__

18. For all of the reasons described above, there is probable cause to believe that MAGANA committed a violation of 18 U.S.C. § 111(a)(1): Assaulting, resisting, or impeding certain officers or employees involving physical contact.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 30th day of
August 2025.


_____
HONORABLE SHERI PYM
UNITED STATES MAGISTRATE JUDGE