TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
PETER DAHLQUIST
Assistant United States Attorney
Chief, Riverside Office
BENJAMIN J. WEIR (Cal. Bar No. 312418)
COURTNEY N. WILLIAMS (Cal. Bar No. 339301)
Assistant United States Attorneys
Riverside Office
    3403 Tenth Street, Suite 200
    Riverside, California 92501
    Telephone:   (951) 276-6228
                (951) 368-1473
    Email:     Benjamin.Weir@usdoj.gov
            Courtney.N.Williams@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>OSCAR MAGANA REYES,<br><br>        Defendant. | ED CR No. 25-316-SSS<br><br>UNITED STATES' TRIAL MEMORANDUM<br><br>Trial Date:   April 13, 2026<br>Location:    Courtroom of the Hon.<br>                  Sunshine S. Sykes |

Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorneys Benjamin J. Weir and Courtney N. Williams, hereby files its Trial Memorandum.  Government counsel met and conferred via telephone with defense counsel C. Reginald Taylor regarding the various pretrial filings on March 27, 2026.

Dated: March 27, 2026                    Respectfully submitted,

TODD BLANCHE
Deputy Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

PETER DAHLQUIST
Assistant United States Attorney
Chief, Riverside Office

_____/s/_____
BENJAMIN J. WEIR
COURTNEY N. WILLIAMS
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendant Oscar Magana Reyes will stand trial on April 14, 2026, for Assault on a Federal Officer in violation of 18 U.S.C. § 111(a)(1), (b).

On August 29, 2025, U.S. Customs and Border Patrol and U.S. Immigration and Customs Enforcement – Enforcement and Removal Operations (together "immigration authorities") were conducting a planned immigration operation.  Immigration authorities saw defendant riding a bicycle and noticed that he physically resembled the target of their enforcement operation.  Two officers approached defendant and spoke to him. During that conversation, defendant told the officers that he did not have legal status in the United States.  Defendant then fled on his bicycle.  Immigration authorities pursued defendant and tried to arrest him.  Defendant pushed his bicycle towards the officers, failed to comply with officers' commands, and resisted having handcuffs placed on him. This led to an officer using his Electronic Control Weapon, also known as a "taser," on defendant.  Notwithstanding being hit with a taser projectile, defendant lunged at the officer, grabbed his arm, and tried to bite him.  Defendant thereafter forcefully stole the officer's taser.  Officers continued to issue verbal commands to defendant and struck defendant with a baton while trying to subdue him.  Defendant continued to not comply, and an officer then used "pepper spray" on defendant.  Defendant thereafter used the stolen taser on one of the officers, striking the officer in the groin area that sent electrical shock into the officer.  This caused the officer to fall to the ground.

## II.    LENGTH OF TRIAL AND NUMBER OF WITNESSES

In total, the United States estimates that its case-in-chief (with a reasonable allotment for cross-examination) will be approximately one day.  The United States intends to call the following witnesses in its case-in chief:

(1) Bryan Chiles

(2) Deportation Officer Phillip Kautzer (victim)

(3) CBP Officer Jayro Villalobos

(4) CBP Officer Jason MacMillan

(5) Deportation Officer Christopher Barth

(6) HSI Supervisory Special Agent Javier Soiza

(7) HSI Special Agent Kristopher Templin

(8) CBP Officer Nathan Tran

(9) CBP Officer Kenny Tsang[1]

United States Exhibits: The United States will seek to admit approximately six to ten exhibits, which primarily include home security footage, an audio file of defendant's interview, a English translation transcript of the interview, a taser information report, still photographs, a map, and the physical taser defendant used to assault the officer.

**III.   STIPULATIONS WITH DEFENSE COUNSEL**

The parties have not yet entered any trial stipulations.

**IV.   ELEMENTS OF THE CRIME**

Defendant is charged with one count of assault on a federal officer in violation of 18 U.S.C. § 111(a)(1), (b).

**A.   Elements of the Offense**

To prevail, the United States must prove each of the following elements beyond a reasonable doubt:

First, the defendant forcibly assaulted P.K.; and

Second, the defendant assaulted P.K. while P.K. was engaged in or on account of, his official duties.

Third, the defendant used a deadly or dangerous weapon, namely, an Electronic Control Weapon, which is also known as a "taser." See Ninth Cir. Model Jury Instructions 8.1 (2022 ed.).

---

[1] The United States reserves the right to call additional witnesses in either its case-in-chief or any rebuttal case.

### B.    "Forcible Assault" Explained

There is a forcible assault when one person intentionally strikes another, or willfully attempts to inflict injury on another, or intentionally threatens another coupled with an apparent ability to inflict injury on another which causes a reasonable apprehension of immediate bodily harm.  Ninth Cir. Model Jury Instructions 8.1 (2022 ed.).

### C.    Mens Rea

Section 111 is a general intent crime, and no intent to injure is required to prove this offense.  United States v. Sanchez, 914 F.2d 1355, 1358 (9th Cir. 1990).

### D.    "Official Duties" & Reasonableness of Force Explained

A person is engaging in the performance of official duties if she is acting within the scope of her employment, that is, the officer's actions fall within his agency's overall mission, in contrast to engaging in a personal frolic of his own.  See Comment to Ninth Cir. Model Jury Instructions 8.1 (2022 ed.) (citing United States v. Ornelas, 906 F.3d 1138, 1149 (9th Cir. 2018)).  The victim in this case was an FPS Inspector deployed to Los Angeles to protect federal buildings and employees entering those buildings during immigration-related protests. The reasonableness of a particular use of force is an objective standard that turns on the facts of each case, and must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.  See, e.g., Graham v. Connor, 490 U.S. 386 (1989) ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.").

### E.    Deadly Weapon Explained

An Electronic Control Weapon is a deadly or dangerous weapon if it is used in a way that is capable of causing death or serious bodily injury.

### F.    Self-Defense, If Applicable

The United States has moved to exclude any evidence or argument related to self-defense.  (Dkt. 37.)  The motion is pending before the Court.  If the Court finds that

3

defendant is entitled to a self-defense instruction, the United States proposes the following instruction:

It is a defense to the charge if (1) defendant did not know that P.K. was a federal officer, (2) defendant reasonably believed that use of force was necessary to defend oneself against an immediate use of unlawful force, and (3) defendant used no more force than appeared reasonably necessary in the circumstances.  See Ninth Cir. Model Jury Instructions 8.3 (2022 ed.).

If defendant makes a prima facie showing of all three elements and is permitted to make a self-defense argument, the United States must additionally prove at trial: (1) defendant knew that P.K. was a federal officer, (2) defendant did not reasonably believe force was necessary to defend against an immediate use of unlawful force, or (3) defendant used more force than appeared reasonably necessary in the circumstances. See id.

## V.    RELEVANT LEGAL AND EVIDENTIARY ISSUES

### A.    Pending Motions

On March 6, 2026, the United States filed its Motion in Limine No. 1 to preclude evidence and argument aimed at jury nullification by challenging immigration law or policy.

On March 6, 2026, the United States filed its Motion in Limine No. 2 to preclude defendant from raising or introducing any self-defense arguments.

### B.    Photographs and Video Surveillance

The United States intends to introduce photographs and video footage at trial. Admitting a photograph or video into evidence requires that the proponent meet only a low hurdle.  "Under the Federal Rules, the witness identifying the item in a photograph need only establish that the photograph is an accurate portrayal of the item in question." People of Territory of Guam v. Ojeda, 758 F.2d 403, 408 (9th Cir. 1985) (interpreting Fed. R. Evid. 901(b)(1)).  The Ninth Circuit has held that "[p]hotographs are admissible

4

as substantive as well as illustrative evidence." United States v. May, 622 F.2d 1000, 1007 (9th Cir. 1980).

Photographs and videos should be admitted so long as they fairly and accurately represent the event or object in question. See United States v. Oaxaca, 569 F.2d 518, 525 (9th Cir. 1978). Notably, "the witness who lays the authentication foundation need not be the photographer, nor need the witness know anything of the time, conditions, or mechanisms of the taking of the picture." 32 McCormick on Evid. § 215 (7th ed.). Rule 901(a) simply requires that a proponent of evidence make a prima facie showing of authenticity so that a reasonable juror could find "that the item is what the proponent claims it is." Fed. R. Evid. 901(a).

### C.    Lay Testimony

Federal Rule of Evidence 701 "permits a lay witness to give opinion testimony as long as the opinion is (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." United States v. Pino-Noriega, 189 F.3d 1089, 1097 (9th Cir. 1999) (quotation marks omitted). The United States anticipates eliciting testimony from CBP Officer Jayro Villalobos, CBP Officer Jason MacMillan, and Deportation Officer Christopher Barth about defendant's actions. Amongst them, these officers observed defendant's demeanor, body language, and movements; one or more of the officers also saw defendant use the electronic control weapon to tase Deportation Officer Phillip Kautzer.

### D.    Defendant's Statements

Under the Federal Rules of Evidence, a defendant's statement is admissible only if offered against him; a defendant may not elicit his own prior statements. See Fed. R. Evid. 801(d)(2)(A); United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988) (per curiam). To permit otherwise would place a defendant's statements "before the jury without subjecting [himself] to cross-examination, precisely what the hearsay rule forbids." United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000) (holding that the district court properly barred defendant from seeking to introduce his exculpatory post-

arrest statements through cross-examination of government agent); United States v. Cunningham, 194 F.3d 1186, 1199 (11th Cir. 1999) ("[A] defendant cannot attempt to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross examination.").

When the United States admits some of a defendant's prior statements, the door is not thereby opened to the defendant to put in all his out-of-court statements. This is because, when offered by defendant, the statements are still inadmissible hearsay. See Fed. R. Evid. 801(d)(2); see also United States v. Burreson, 643 F.2d 1344, 1349 (9th Cir. 1981); United States v. Willis, 759 F.2d 1486, 1501 (11th Cir. 1985) (defendant's exculpatory statement inadmissible when offered by defense).

Similarly, a defendant's exculpatory statements are not admissible under Federal Rule of Evidence 106, the "rule of completeness." Evidence that is inadmissible is not made admissible by invocation of the "rule of completeness." See United States v. Collicott, 92 F.3d 973, 983 (9th Cir. 1996) (hearsay not admissible notwithstanding Rule 106). As the Ninth Circuit noted in Ortega, a defendant's non-self-inculpatory statements are inadmissible hearsay even if they were made contemporaneously with other self-inculpatory statements. Ortega, 203 F.3d at 682 (citing Williamson v. United States, 512 U.S. 594, 599 (1994)). The "rule of completeness" may require that all of a defendant's prior statements be admitted only where it is necessary to explain an admitted statement, to place it in context, or to avoid misleading the trier of fact. See, e.g., United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982). The doctrine does not, however, require introduction of portions of a statement that are neither explanatory of, nor relevant to, the admitted passages. See Ortega, 203 F.3d at 682-683; Marin, 669 F.2d at 84. The burden is on the defendant to identify a basis for admitting additional portions of the defendant's prior statement. United States v. Branch, 91 F.3d 699, 729 (5th Cir. 1996).

The United States intends to admit statements made by defendant. His out-of-court statement is admissible if offered against him by the United States. Fed. R. Evid. 801(d)(2)(A).

### E. Scope of Cross-Examination of Defendant

If the defendant testifies at trial, he waives his right against self-incrimination, and the United States may cross-examine him on all matters reasonably related to the subject matter of her testimony. See, e.g., Fitzpatrick v. United States, 178 U.S. 304 (1971) ("The defendant cannot assert a self-incrimination privilege 'on matters reasonably related to the subject matter of his cross-examination.'"); United States v. Black, 767 F.2d 1334, 1341 ("What the defendant actually discusses on direct does not determine the extent of permissible cross-examination or his waiver. Rather, the inquiry is whether 'the government's questions are reasonably related' to the subjects covered by the defendant's testimony.") (internal quotations and citation omitted).

The scope of cross-examination is within the discretion of the trial court. Fed. R. Evid. 611(b). Defendant has no right to avoid cross-examination on matters that call into question his claim of innocence. See United States v. Mehrmanesh, 682 F.2d 1303, 1310 (9th Cir. 1982); United States v. Miranda-Uriarte, 649 F.2d 1345, 1353-54 (9th Cir. 1981). The United States, however, may introduce evidence should defendant "open the door." See United States v. Alexander, 48 F.3d 1477, 1488 (9th Cir. 1995), as amended on denial of reh'g (Apr. 11, 1995) ("When a defendant takes the stand and denies having committed the charged offense, he places his credibility directly at issue.").

### F. Affirmative Defenses and Reciprocal Discovery

The subject of self-defense is pending before this Court. Defendant has not given notice of his intent to rely on any other affirmative defense.

Rule 16 of the Federal Rules of Criminal Procedure creates certain reciprocal discovery obligations on the part of defendants to produce three categories of materials that they intend to introduce as evidence at trial: (1) documents and tangible objects; (2) reports of any examinations or tests; and (3) expert witness disclosure. Rule 16

imposes on defendants a continuing duty to disclose these categories of materials. Fed. R. Crim. P. 16(b)(1)(A), (b)(1)(C), and (c). In those circumstances where a party fails to produce discovery as required by Rule 16, the rule empowers the district court to "prohibit that party from introducing the undisclosed evidence," or it may "enter any other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2)(C) and (D). To the extent defendant may attempt to introduce or use any evidence at trial that she has not produced to the United States, such documents should be excluded. See Taylor v. Illinois, 484 U.S. 400, 415 (1988) (defendant's failure to comply with, or object to, government's discovery request before trial justified exclusion of unproduced evidence).

To date, defendant has produced no reciprocal discovery.

### G.     Jury Nullification

The United States also reserves the right to object to any evidence and/or argument introduced for the purpose of jury nullification, including concerning punishment, the actions of law enforcement both after defendant's arrest and at other protest events, or national immigration policy and its effect on the community and/or individuals. A defendant has no right to present evidence relevant only to such a defense. United States v. Powell, 955 F.2d 1206, 1213 (9th Cir. 1992); Zal v. Steppe, 968 F.2d 924, 930 (9th Cir. 1992) (Trott, J., concurring) ("[N]either a defendant nor his attorney has a right to present to a jury evidence that is irrelevant to a legal defense to, or an element of, the crime charged.").